IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

GREGORY A. CARTER,

        Plaintiff,

V.                                                                    CIVIL ACTION NO. 3:04-0716

JO ANNE BARNHART,
Commissioner of Social Security,

        Defendant.

## FINDINGS AND RECOMMENDATION

In this action, filed under the provisions of 42 U.S.C. §405(g), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff protectively filed his application on September 26, 2002, alleging disability commencing June 21, 1999,[1] as a consequence of heart blockages, back problems and high blood pressure. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found him not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, he filed this action seeking review of the Commissioner's decision.

---

[1] Plaintiff's insured status expired June 20, 2001, and it was incumbent upon him to establish disability on or before that date. Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1971).

At the time his insured status expired, plaintiff was forty years of age and had obtained an eleventh grade education and GED. His past relevant employment experience consisted of work as a construction laborer. In his decision, the administrative law judge found that plaintiff suffered from "degenerative changes of the lumbar spine, two lumbar herniated discs status post surgery, hypertension and mild ischemia," impairments he considered severe. Though concluding that plaintiff was unable to perform his past work,[2] the administrative law judge determined that he had the residual functional capacity for a limited range of sedentary level work. On the basis of this finding, and relying on Rule 201.28 of the medical-vocational guidelines[3] and the testimony of a vocational expert, he found plaintiff not disabled.

From a review of the record, it is apparent that the evidence, though conflicting, provides substantial support for the Commissioner's decision. Plaintiff has a history of back problems beginning with a ruptured L5, S1 disc for which he had a partial hemilaminectomy, as well as a laminectomy at L4-5, in April of 1992. According to subsequent reports, he recovered completely from the surgery and resumed work until he was injured again in 1999 and suffered a herniated nucleus pulposus at L4-5 on the left. Dr. Panos Ignatiadis, who performed the prior surgery, performed a diskectomy at L4-5 on the left. Subsequent follow-up reports reflect that plaintiff's recovery from this surgery was not complete. He continued to complain of severe pain in the back and down the left leg. Exams showed restricted range of motion, a limp and positive straight leg raising tests. Strength and reflexes were generally described as good.

---

[2] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[3] 20 C.F.R. Part 404 Subpart P, Appendix 2, Table No. 1.

Upon recommendation of Dr. Ignatiadis, plaintiff began treatment at the Cabell Huntington Hospital Pain Clinic in April of 2000. On initial exam, in addition to tenderness and decreased range of motion, spasm was detected in the left paraspinal muscles. Plaintiff was leaning to the right and was unable to heel or toe walk and experienced diminished motor strength and sensation in the left lower extremity. The left Achilles reflex was also absent. The diagnosis was myofascial pain syndrome. Noting that plaintiff's condition was "rather acute," Dr. Ozturk, the pain management specialist, felt it best to start with diagnostic therapeutic nerve blocks. He observed that there was "rather strong" evidence of radiculopathy in the left leg but it seemed to be eliminated with distraction, and the sitting straight leg raising test was negative. On May 2, 2000, he noted plaintiff's leg pain stopped "almost completely" after he administered a selective nerve root block at the left L5 level. On May 11, however, Dr. Ozturk refused to give plaintiff another prescription for pain medication after he alleged it had been stolen. Dr. Ozturk then wrote to Dr. Ignatiadis advising him that he believed medication abuse was a problem with plaintiff and that he was very strict about regulating and prescribing medication. Plaintiff's care was subsequently transferred to the St. Mary's Hospital Pain Relief Center.

A report of an independent medical examination performed for workers' compensation by Kip Beard, M.D., on April 25, 2000, reflects that plaintiff experienced improvement with injections given by Dr. Ozturk. In addition to pain and other symptoms in the left lower extremity, plaintiff reported pain radiating to the right hip. Exam revealed a left sided limping gait, a right sided antalgic lean, mild difficulty standing on the left leg alone, decreased range of motion, positive straight leg raising, possible slight weakness of the left great toe extensor, decreased pinprick sensation and absent left Achilles reflex. Plaintiff was able to stand on his heels

3

and toes at this time and could do one-half of a squat.  Dr. Beard felt these findings were indicative of persistent L5 radiculopathy and that plaintiff should continue with pain clinic treatment.

Dr. Ignatiadis reported in July of 2000 that plaintiff's strength and reflexes were "satisfactory" and two months later he wrote that plaintiff was "the best I have seen him," noting that range of motion was "good," strength and reflexes "normal" and the pain level was decreased from 10/10 to 4/10.  Plaintiff reported he had received injections by Dr. Muniz at the pain center which had helped.  Unfortunately, by December 29, 2000, he was again reporting difficulty with right leg pain and displayed limited range of motion and a pelvic tilt to the left, although strength and reflexes remained good.  In February of 2001, Dr. Ignatiadis noted significant restriction of motion and weakness of the extensor hallucis longus muscle.  Dr. Muniz also related around this time that after plaintiff's first injection in September of 2000 he had developed significant hypertension and treatment was delayed while this condition was brought under control.  He noted a limping gait, tenderness and other pain behaviors and diagnosed possible scar tissue formation as well as persistent back and leg pain.

On June 8, 2001, Dr. Ignatiadis remarked that plaintiff was the best he had seen him in a long time, adding that the injections from Dr. Muniz had helped.  He recommended a functional capacity evaluation which was performed on June 21, 2001 and July 10, 2001.[4]  Plaintiff was found capable of performing activities at the sedentary level of exertion, although the lifting limit noted was zero pounds occasionally and frequently.  He was observed to be cooperative during testing, displaying a good attitude and "fair" pace.  Dr. Marsha Bailey subsequently performed an

---

[4] The evaluation had to be stopped on June 21, 2001 due to increased blood pressure and heart rate.

independent medical exam on September 6, 2001, and observed that plaintiff walked slowly but without an assistive device and got up every fifteen to twenty minutes to stretch and change positions. Tenderness was detected in the lower back and left SI joint along with restricted range of motion and decreased sensation along the L5 nerve root on the left. Lower extremity strength was intact and deep tendon reflexes were equal bilaterally. Plaintiff was able to walk on his heels and toes, though with increased pain, and could perform seventy-five percent of a squat. Straight leg raising was positive in the supine and sitting positions. Dr. Bailey's diagnosis was chronic low back pain with radiculopathy. She was of the view that plaintiff was at maximum medical improvement and could return to sedentary level work.

On August 3, 2001, Dr. Ignatiadis reported exam findings of "full" motility of the spine, negative straight leg raising and satisfactory strength and reflexes. He opined plaintiff was at maximum medical improvement. Noting his functional capacity for sedentary work, he also expressed the opinion plaintiff was a candidate for rehabilitation. While subsequent reports through 2002, 2003 and into 2004 were also submitted, they document plaintiff's condition long past his date last insured and have little bearing on his condition and the evaluation of his residual functional capacity as of June 20, 2001, and before.

Drs. Bailey and Ignatiadis and the physical therapist who performed the functional capacity evaluation are the only sources to assess plaintiff's residual functional capacity. The state agency medical advisors who reviewed the record concluded there was insufficient evidence prior to the date last insured for them to render an opinion. The administrative law judge determined that a limitation to sedentary level work was consistent with the evidence; however, he concluded plaintiff could lift up to ten pounds, not zero pounds as found at the functional capacity evaluation.

5

He believed the latter finding was inconsistent with reports from Dr. Ignatiadis that plaintiff was a candidate for rehabilitation and also with Dr. Bailey's opinion that he could do sedentary work and with plaintiff's testimony that he could lift ten to twelve pounds. In addition, the administrative law judge determined he could sit for six hours alternating positions, could stand and walk for two hours overall, push and pull with the upper extremities on an unlimited basis and perform tasks not requiring significant bending, climbing or stooping. He also found that plaintiff suffered mild to moderate pain which did not significantly interfere with his ability to maintain attention and concentration. The evidence, which clearly reflects ongoing limitations from plaintiff's 1999 back injury, nonetheless supports the administrative law judge's finding that he was not so limited that he could not perform this restricted degree of sedentary level work. The administrative law judge did not assess any limitations on mental functioning as there was no history of treatment for anxiety or depression and, even though Dr. Muniz prescribed Xanax for him, there was no documentation of continuing symptoms. These findings are also supported by substantial evidence.

While plaintiff testified that he could sit, stand or walk for only very short periods due to pain, engage in few activities and that treatment had not provided relief, the administrative law judge, taking account of the evidence as well as his observations of plaintiff at the hearing, concluded that his testimony was entitled to less than full credibility. Plaintiff's testimony that he had good strength in his hands and could lift ten to twelve pounds as well as conflicts between his written statements that he received no pain relief with treatment and his reports to physicians that certain modalities did provide at least some relief were persuasive to the administrative law judge in making this determination. He also noted that in January of 2002, six months after plaintiff's insured status expired, he reported he was going to settle with workers' compensation, go back to

school and then start his own business. These factors were not indicative to the administrative law judge that plaintiff's allegations of severe restriction due to pain were credible. In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," these findings are entitled to "great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Finally, in response to hypothetical questioning which included plaintiff's age, education, work experience and a reasonably accurate profile of his functional capacity and overall medical condition, a vocational expert testified that there were significant numbers of sedentary jobs in the national economy which plaintiff could perform.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's findings are supported by substantial evidence this Court is bound to uphold the decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). In the present case, the evidence, though clearly conflicting, provides substantial support for the Commissioner's findings with respect to plaintiff's impairments and residual functional capacity. Under such circumstances, the decision of the Commissioner should be affirmed.

## RECOMMENDATION

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted and the decision of the Commissioner affirmed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to all counsel of record.

DATED: August 31, 2005

MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE